# EXHIBIT A

## (Process and Pleadings)

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | NINTH JUDICIAL CIRCUIT |
| COUNTY OF BERKELEY | ) | |
| | ) | Case No.: 2021-CP-08-_____ |
| | ) | |
| MAGNOLIA SOLAR LLC | ) | |
| | ) | |
| | ) | **SUMMONS** |
| Plaintiff, | ) | **(Jury Trial Demanded)** |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTH CAROLINA PUBLIC SERVICE | ) | |
| AUTHORITY, (AKA "SANTEE | ) | |
| COOPER"), | ) | |
| | ) | |
| Defendant. | ) | |

**TO THE DEFENDANT NAMED ABOVE:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgement by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

*/s/  Thomas P. Gressette, Jr.*
**Thomas P. Gressette, Jr. (SC Bar #14065)**
Direct:  (843) 727-2249
Email:  Gressette@WGFLLAW.com

**John P. Linton, Jr. (SC Bar #79130)**
Direct:  (843) 727-2252
Email:  Linton@WGFLLAW.com

**WALKER GRESSETTE FREEMAN & LINTON, LLC**
Mail:    P.O. Drawer 22167, Charleston, SC 29413
Office:  66 Hasell Street, Charleston, SC 29401
Phone:  (843) 727-2200

_/s/  Adam Louis Horner_

**Adam Louis Horner (SC Bar #78166)**

NARENCO, National Renewable Energy Corporation

General Counsel

<u>Mail</u>:   227 Southside Drive

       Suite B

       Charlotte, NC 28217-1727

<u>Email</u>:  adam.horner@narenco.com

<u>Phone</u>: (704) 200-2920

**ATTORNEYS FOR THE PLAINTIFF**
**MAGNOLIA SOLAR LLC**

April 21, 2021

Charleston, South Carolina

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | NINTH JUDICIAL CIRCUIT |
| COUNTY OF BERKELEY | ) | |
| | ) | Case No.: 2021-CP-08-_____ |
| | ) | |
| | ) | |
| MAGNOLIA SOLAR LLC | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | **(Jury Trial Demanded)** |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTH CAROLINA PUBLIC SERVICE | ) | |
| AUTHORITY, (AKA "SANTEE | ) | |
| COOPER"), | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES THE PLAINTIFF, by and through its undersigned attorneys, complaining of Defendant and alleging as follows:

1. The Plaintiff, Magnolia Solar LLC ("Magnolia"), a South Carolina limited liability company, brings this action pursuant to the South Carolina Uniform Declaratory Judgments Act, codified at S.C. Code § 15-53-30, *et seq*.

2. The Defendant, South Carolina Public Service Authority (also known as Santee Cooper) ("Santee Cooper"), is a body corporate and politic with a principal office located in the Town of Moncks Corner.

3. This Court has subject matter jurisdiction and it is proper for this Court to proceed pursuant to the South Carolina Uniform Declaratory Judgments Act and the Public Utility Regulatory Policies Act of 1978 ("PURPA") § 210(f), 16 U.S.C. § 824a-3.

4. Venue is proper herein as the Defendant had its principal place of business in Berkeley County at the time the cause of action arose.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

5.  Pursuant to Federal Energy Regulatory Commission ("FERC") Order 69, Santee Cooper is required under PURPA Section 210 to purchase available electric energy from cogeneration and small power production facilities which become a qualifying facility.

6.  Magnolia's planned electric generating facility is a qualifying facility ("QF") certified in FERC Docket No. QF15-850, filed June 17, 2015, and as subsequently amended, January 27, 2017.

7.  Magnolia intends, at its sole cost and expense, to design, construct, and operate a solar PV electric generating facility on three parcels of land totaling 463 acres in Orangeburg County having an address of 283 Juniper Street, Neeses, South Carolina.

8.  The facility (hereinafter "Magnolia QF") will have total nameplate generating capacity of 42 MWac and anticipated average net annual generation of approximately 105,000 MWh.

9.  Pursuant to the Public Utility Regulatory Policies Act of 1978 ("PURPA"), Santee Cooper is required to purchase all of the energy and capacity from the Magnolia QF. See 18 C.F.R. § 292.303(a) (stating "Each electric utility shall purchase, in accordance with § 292.304 ... any energy and capacity which is made available from a qualifying facility").

10. Based on the Magnolia QF's status, as well as the size and location of the Magnolia QF, there are no exceptions that apply under PURPA that would allow Santee Cooper to avoid, in whole or in part, its obligation to purchase all of the energy and capacity from the Magnolia QF.

11. The price Santee Cooper (as the purchasing utility) must pay Magnolia for the energy and capacity of the Magnolia QF is determined by Magnolia's election between two price calculation options authorized by 18 C.F.R. § 292.304(d).

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

12. Pursuant to 18 C.F.R. § 292.304(d), entitled, "**Purchases 'as available' _or_ pursuant to a legally enforceable obligation**_,_" Magnolia has the option either:

> (1) ***To provide energy as the qualifying facility determines*** such energy to be available for such purchases, in which case the rates ***for such purchases shall be based on the purchasing utility's avoided costs calculated <u>at the time of delivery</u>***; or

> (2) ***To provide energy or capacity pursuant to a legally enforceable obligation*** **["LEO"]** for the delivery of energy or capacity ***over a specified term***, in which case ***the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on*** either:

>> (i) The avoided costs ***<u>calculated at the time of delivery</u>***; ***<u>or</u>***

>> (ii) The avoided costs ***<u>calculated at the time the obligation is incurred</u>***.

18 C.F.R. § 292.304(d) (2020) (multiple emphases added).[1]

13. In the industry, a QF and purchasing utility routinely enter into a Power Purchase Agreement ("PPA") to document the QF's pricing election and any other negotiated terms prior to the QF beginning construction of its facility.

14. With a signed PPA, the QF can more accurately anticipate its costs and profitability thereby allowing the QF to attract investors as it prepares to begin construction.

15. Accordingly, the price Santee Cooper will pay Magnolia can be negotiated into an agreement between Santee Cooper and Magnolia, or the pricing can be set solely by Magnolia's election to proceed pursuant to a LEO.

16. A LEO can take effect before a contract is executed and may not necessarily be incorporated into a contract. <u>JD Wind 1, LLC</u>, 129 FERC 61148, at P 25 (2009), reh'g denied, 130 FERC 61127 (2010) ("[A] QF, by committing itself to sell to an electric

---

[1] 18 C.F.R. § 292.304 was amended with an effective date of February 16, 2021.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

utility, also commits the electric utility to buy from the QF; these commitments result either in contracts or in non-contractual, but binding, legally enforceable obligations.").

17. The LEO granted to QFs by 18 C.F.R. § 292.304(d) is intended to and functions "to prevent a utility from circumventing the requirement that provides capacity credit for an eligible qualifying facility merely by refusing to enter into a contract with the qualifying facility." *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978,* Order No. 69, FERC Stats. & Regs. ¶ 30,128 at 30,880 (1980).

18. Utilities may impose reasonably designed requirements that are consistent with ongoing state programs in the creation of the LEO.  However, it is unlawful for a utility to impose unreasonable obstacles to the formation of a LEO that are not intended to further state programs or state public policy.

19. The creation of a LEO for the Magnolia QF is consistent with South Carolina's public policy favoring renewable energy and the state's ongoing programs.

20. In May 2019, South Carolina enacted the Energy Freedom Act ("EFA"), which memorialized South Carolina's commitment to renewable energy sources, including solar. The EFA requires, among other things, that the effected utilities enter into PPA's with a minimum ten year term.[2]

21. Beginning in or about November 2016, Magnolia initiated communication with Santee Cooper regarding the Magnolia QF to be located in Orangeburg County and Magnolia's intent to provide energy to Santee Cooper.

22. Magnolia sought to enter into a PPA with Santee Cooper regarding the Magnolia QF.

---

[2] While Santee Cooper is not bound by the provisions of the EFA, its implementation of PURPA must comport with state public policy and programs, which are found, in part, in the EFA.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

23. In November 2016, Santee Cooper and representatives of Magnolia began discussing a potential PPA for the Magnolia project.[3]

24. On or about November 10, 2016, Steve Spivey, Santee Cooper's Manager for Renewable Energy, informed Magnolia by email that he would be discussing the "Magnolia LEO" with internal counsel and would start drafting the PPA that Magnolia requested.

25. On or about November 16, 2016, Mr. Spivey emailed NARENCO a document that Spivey described as "a shell of a PPA." The shell PPA did not include pricing information and Mr. Spivey noted he did not "have a timeframe …at this time" for when Santee Cooper would have pricing information for Magnolia to review.

26. The pricing information referenced is the "***avoided costs***" calculation referenced in 18 C.F.R. § 292.304(d), which is the basis for the purchase price of the power.

27. Magnolia needed the pricing information (aka the avoided costs) so it could decide whether it wished Santee Cooper to purchase power from the Magnolia QF:

  i.  based upon a price of "***<u>avoided costs calculated at the time of delivery</u>***" of the power throughout the term of the PPA, ***<u>or</u>***

  ii. based upon a fixed price set at the "***<u>avoided costs at the time the obligation is incurred.</u>***"

28. This is Magnolia's election option pursuant to 18 C.F.R. § 292.304(d)(2)(i) and (ii).

29. Over the next 18 months, Magnolia and Santee Cooper discussed a variety of transaction structures, reflecting different pricing for energy and capacity.

30. The types of contract terms, such as cost and term, that Magnolia and Santee Cooper were

---

[3] Much of the interaction between Santee Cooper and Magnolia was handled by NARENCO team members on Magnolia's behalf. NARENCO is the parent company of Magnolia Solar LLC. It is a North Carolina limited liability company with its principal office at 227 Southside Drive, Suite B, Charlotte, North Carolina 28217-1727.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

negotiating for inclusion in a PPA were customary for solar projects in South Carolina. However, the delay in completing the PPA was not customary.

31. The delay in completing the PPA is directly attributable to Santee Cooper's refusal to negotiate in good faith and Santee Cooper's creation of multiple obstacles making it unreasonably difficult for Magnolia to obtain a PPA or to operate under its LEO.

32. On May 4, 2018, Mr. Spivey finally provided Magnolia with Santee Cooper's avoided costs.

33. With Santee Cooper's avoided cost information Magnolia was able to elect how it wished to proceed with pricing, and on May 11, 2018, Magnolia sent an updated form of the PPA that Santee Cooper had provided previously, which Magnolia revised based on the avoided costs that Mr. Spivey provided to Magnolia on May 4, 2018 ("May 11, 2018, PPA Draft").

34. In the May 11, 2018, PPA Draft, Magnolia set out its election for Santee Cooper to purchase the Magnolia Project's power at **"the avoided costs calculated at the time the obligation is incurred."**

35. Magnolia also confirmed in its email conveying the May 11, 2018, PPA Draft to Santee Cooper as follows:  "Magnolia Solar LLC, a Qualifying Facility (FERC:QF15-850), commits to sell 100% of its output to Santee Cooper under the attached or similar PPA and is ready to execute the PPA now."

36. Prior to May 11, 2018, Magnolia demonstrated its commercial viability and financial commitment to construct its facility.

37. Santee Cooper refused to execute the May 11, 2018, Draft PPA.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

38. Over the following months Magnolia attempted on numerous occasions to complete negotiations of the PPA. Throughout the period Santee Cooper engaged in multiple actions designed to delay and/or thwart negotiation of the PPA, including, among other things, mischaracterizing the transaction, going months between communications, attempting to force Magnolia to accept Santee Cooper's 2019 pricing which was more favorable to Santee Cooper, and intentionally stalling progress of negotiations. These actions were unreasonable, prevented execution of a PPA, and caused an unreasonable delay to Magnolia's operation under its LEO.

39. Via letter dated November 15, 2019, counsel for Magnolia wrote to J. Michael Baxley, Senior Vice President and General Counsel for Santee Cooper citing Magnolia's "continuous efforts over three years to execute a PPA" and providing notice of Magnolia's position that "Santee Cooper has not fulfilled its obligations under the Public Utility Regulatory Policy Act ('PURPA')." A copy of the letter is attached hereto as Exhibit A.

40. The November 15, 2019, letter made clear that upon finally receiving the avoided cost information from Santee Cooper, at least as early as its May 11, 2018, email, Magnolia committed to sell the full output from Magnolia to Santee Cooper. By operation of law, Magnolia's commitment established a LEO under PURPA effective on May 11, 2018, that commits Santee Cooper to purchase from Magnolia based upon a price fixed for now based upon "***avoided costs at the time the obligation is incurred***" ("the Magnolia LEO").

41. Magnolia is prepared, willing, and intends to operate under the Magnolia LEO.

42. Santee Cooper has refused to acknowledge the Magnolia LEO and has indicated it will not purchase power under the Magnolia LEO in the future. Upon information and belief,

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800088

Santee Cooper contends that a LEO was not established because Magnolia refused to accept Santee Cooper's five-year term for a PPA.

43. Presumably, Santee Cooper contends that in implementing PURPA's regulations, it has enacted a requirement that in order for a LEO to be created, the QF must agree to a five year term in a PPA.

44. This requirement is not reasonably designed to fit into South Carolina's ongoing programs and economic and regulatory circumstances. Instead, it is designed to severely limit Santee Cooper's obligations to purchase energy from QF's in favor of Santee Cooper's more desired means of electrical generation.

45. Indeed, Santee Cooper's implementation of the PURPA requirements runs in exact contravention to PURPA's plain language, South Carolina policy, and the state's regulatory circumstances.

46. PURPA specifically mandates that a LEO operate as an alternate path to an executed PPA so as to prevent a utility from using the PPA as a cudgel to avoid purchasing from a QF and in particular a solar energy facility. Nevertheless, Santee Cooper has attempted to require Magnolia to agree to its PPA terms in order to create a LEO, which runs afoul of the very reason PURPA contains the LEO provision.

47. Santee Cooper's efforts to chill QF power generation is also seen in the disparity between the primary power producers in South Carolina solar generation:

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

| South Carolina Operating Solar Power Projects | | | |
|---|---|---|---|
| | Total MW | % | Source |
| All In-Service Solar | 1,070 | | 2020 EIA Form 860 Operating Solar |
| Santee Cooper Solar | 8 | 0.75% | Santee Cooper Integrated Resource Plan dated 12/23/2020 |

| South Carolina Electric Generation Capacity (all sources) | | | |
|---|---|---|---|
| | Total MW | % | Source |
| South Carolina Total | 23,962 | | 2019 EIA Net Summer Generation |
| Santee Cooper | 5,809 | 24.2% | Santee Cooper Integrated Resource Plan dated 12/23/2020 |

48. Whereas other South Carolina utilities have incorporated solar generation, Santee Cooper remains the only utility that has managed to avoid purchasing more than a nominal amount of solar generated energy.

49. A concrete, identifiable issue exists, and Magnolia asserts legal rights and a positive legal duty with respect thereto, which are denied by Santee Cooper.

50. There is a justiciable controversy calling for the invocation of declaratory judgment action.

51. Magnolia asks this Court to settle and to afford relief from uncertainty and insecurity with respect to rights, status and the legal relations between Magnolia and Santee Cooper.

52. Magnolia is entitled to seek, and does hereby seek, an order of this Court declaring the rights, obligations, and status of the parties to this proceeding, and in particular that:

    a. On or before May 11, 2018, Magnolia could demonstrate commercial viability and financial commitment to construct its facility;

    b. On or before May 11, 2018, Magnolia committed to and/or established an enforceable LEO under PURPA ("the Magnolia LEO");

    c. At the time of committing to the Magnolia LEO, Magnolia had the option to, and did elect that, the rates for such purchases would be the avoided costs calculated

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

by Santee Cooper at the time the Magnolia LEO was incurred, which is May 11, 2018;

d.  Magnolia's November 15, 2019, letter made clear that upon finally receiving the avoided cost information from Santee Cooper, at least as early as its May 11, 2018, email, Magnolia committed to sell the full output from Magnolia to Santee Cooper with a 20-year term. By operation of law, Magnolia's commitment established a LEO under PURPA effective on May 11, 2018, that commits Santee Cooper to purchase from Magnolia based upon a price fixed for now based upon "***avoided costs at the time the obligation is incurred***" ("the Magnolia LEO");

e.  Santee Cooper is required to purchase all available generation from the facility during the life of the facility at the avoided cost as elected by Magnolia. Alternatively, Magnolia seeks an order that Santee Cooper is required to purchase all available power for a term of not less than ten years;

f.  Santee Cooper's refusal to acknowledge and purchase power under the Magnolia LEO is contrary to the clear intent of federal law when it empowered QFs like Magnolia to elect to proceed under a LEO with pricing set at the time of establishment of the LEO;

g.  FERC has also specifically instructed that utilities in Santee Cooper's position may not impose obstacles that make it unreasonably difficult to obtain a LEO;

h.  Santee Cooper has improperly imposed obstacles that have made it unreasonably difficult for Magnolia to obtain a PPA or to operate under its LEO;

i.  Any other declaration as to any other fact or finding necessary to declare the responsibilities and obligations of Santee Cooper to Magnolia;

j.  An award to Magnolia of its costs, expenses, disbursements, and attorneys' fees;

k.  Trial by jury of all claims, matters, questions, and issues so triable; and

l.  Any and all other relief to which Plaintiff may be justly and equitably entitled.

## PRAYER FOR RELIEF

WHEREFORE, Magnolia respectfully requests that the Court enter the declaratory judgments herein requested by Magnolia, and that the Court grant Magnolia its costs and expenses, including attorneys' fees, and such other further and equitable relief as it may deem just and proper.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

Respectfully submitted,

*/s/  Thomas P. Gressette, Jr.*
**Thomas P. Gressette, Jr. (SC Bar #14065)**
Direct:  (843) 727-2249
Email:  Gressette@WGFLLAW.com

**John P. Linton, Jr. (SC Bar #79130)**
Direct:  (843) 727-2252
Email:  Linton@WGFLLAW.com

**WALKER GRESSETTE FREEMAN & LINTON, LLC**
Mail:    P.O. Drawer 22167, Charleston, SC 29413
Office:  66 Hasell Street, Charleston, SC 29401
Phone:  (843) 727-2200


*/s/  Adam Louis Horner*
**Adam Louis Horner (SC Bar #78166)**
NARENCO, National Renewable Energy Corporation
General Counsel
Mail:    227 Southside Drive, Suite B
         Charlotte, NC 28217-1727
Email:  adam.horner@narenco.com
Phone:  (704) 200-2920

**ATTORNEYS FOR THE PLAINTIFF**
**MAGNOLIA SOLAR LLC**

April 21, 2021

Charleston, South Carolina

11

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

# EXHIBIT A

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

EVERSHEDS
SUTHERLAND

**Eversheds Sutherland (US) LLP**
700 Sixth Street, NW, Suite 700
Washington, DC  20001-3980

D: +1 202.383.0248
F: +1 202.637.3593

catherinekrupka@
eversheds-sutherland.com

November 15, 2019

**VIA EMAIL AND FEDERAL EXPRESS**

J. Michael Baxley
Senior Vice President and General Counsel
Santee Cooper
1 Riverwood Drive
Moncks Corner, SC  29461

Dear Mr. Baxley:

I am writing to you on behalf of our client, National Renewable Energy Corporation ("NARENCO") in the hopes that you can offer some assistance in finalizing a power purchase and sale agreement ("PPA") between Magnolia Solar LLC ("Magnolia"), a NARENCO affiliate, and South Carolina Public Service Authority ("Santee Cooper"). Notwithstanding NARENCO's continuous efforts over three years to execute a PPA for Magnolia, Santee Cooper has not fulfilled its obligations under the Public Utility Regulatory Policy Act ("PURPA").

**Project Background**

Magnolia is a qualifying facility ("QF") certified in FERC Docket No. QF15-850.  The project is located at Firetower Rd., Neeses, South Carolina, which is in Santee Cooper's service territory.  The project capacity is 42 MWac.

**Legal Obligation to Purchase**

Santee Cooper has an obligation under PURPA to purchase all of the energy and capacity from the Magnolia QF.  18 C.F.R. § 292.303(a) (stating "Each electric utility shall purchase, in accordance with § 292.304 … any energy and capacity which is made available from a qualifying facility").  Based on the QF status, as well as the size and location of the Magnolia project, there are no exceptions that apply under PURPA that would allow Santee Cooper to avoid this obligation in whole or part.

PURPA gives NARENCO the right to elect what rate it wishes to be paid.  18 C.F.R. § 292.304.  NARENCO elected the option under Section 292.304(d)(2)(ii), which states in relevant part that "Each qualifying facility shall have the option … (2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland.  For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

J. Michael Baxley
November 15, 2019
Page 2

capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on… (ii) The avoided costs calculated at the time the obligation is incurred." The Federal Energy Regulatory Commission ("FERC") has held that a "QF, by committing itself to sell to an electric utility, also commits the electric utility to buy from the QF; these commitments result either in contracts or in non-contractual, but binding, legally enforceable obligations." *JD Wind 1, LLC*, 129 FERC ¶ 61,148, at P 25 (2009); *see also FLS Energy, Inc.*, 157 FERC ¶ 61,211 at P 24 (2016) (holding that "The Commission explained in JD Wind 1, LLC that the establishment of a legally enforceable obligation turns on the QF's commitment, and not the utility's actions.").

The following is a summary of key events underlying the establishment of Santee Cooper's legally enforceable obligation ("LEO") to purchase from the Magnolia QF:

- In November 2016, Santee Cooper and NARENCO discussed a PPA for the Magnolia project. On November 10, 2016, Steve Spivey of Santee Cooper informed NARENCO that he would be discussing the "Magnolia LEO" with internal counsel and would start drafting the PPA that NARENCO requested.

- On November 16, 2016, Mr. Spivey sent NARENCO "a shell of a PPA" noting he did not "have a timeframe on the pricing at this time."

- Over the next 18 months, NARENCO and Santee Cooper discussed a variety of transaction structures, reflecting different pricing for energy and capacity over contract terms ranging from 10 to 25 years. The pricing and contract terms that NARENCO and Santee Cooper were discussing were customary for solar projects in South Carolina. *See, e.g.*, *Palmetto Plains Solar Project, LLC*, Docket No. 2017-160-E; *Huntley Solar, LLC*, Docket No. 2017-184-E; *Lily Solar LLC*, Docket No. 2017-185-E; *Midlands Solar LLC*, Docket No. 2018-75-E; *Beulah Solar, LLC*, Docket No. 2018-191-E. They remain so today. *See* S.C. Code § 58.41.20(F)(1).

- On May 4, 2018, Mr. Spivey noted that NARENCO "had asked about [Santee Cooper's] avoided cost in the past" and provided NARENCO with Santee Cooper's five year avoided cost for a solar project.

- On May 11, 2018, NARENCO sent a form of the PPA that Santee Cooper had provided previously, which it revised to include the avoided costs that Mr. Spivey had provided to NARENCO and other terms for the transaction. NARENCO also confirmed that "Magnolia Solar LLC, a Qualifying Facility (FERC:QF15-850), commits to sell 100% of its output to Santee Cooper under the attached or similar PPA and is ready to execute the PPA now."

These communications establish unambiguously that NARENCO was seeking an avoided cost PURPA contract with Santee Cooper with a term of 10 years or more and that the parties had discussed the LEO for Magnolia. Upon finally receiving the avoided cost information from Santee Cooper, NARENCO committed to sell the full output from Magnolia to Santee Cooper with a 20-year term. By law, Magnolia's commitment

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland. For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800888

J. Michael Baxley
November 15, 2019
Page 3

established a LEO under PURPA effective on May 11, 2018 that commits Santee Cooper to purchase from Magnolia.

**Good Faith Negotiations**

FERC created the LEO "to prevent a utility from circumventing the requirement that provides capacity credit for an eligible qualifying facility merely by refusing to enter into a contract with the qualifying facility." *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978*, Order No. 69, FERC Stats. & Regs. ¶ 30,128 at 30,880 (1980). FERC also has instructed that states or municipal utilities "may not impose obstacles that make it unreasonably difficult to obtain a LEO." *See Qualifying Facility Rates and Requirements Implementation Issues Under the Public Utility Regulatory Policies Act of 1978*, 168 FERC ¶ 61,184 at P 139 (2019) (citing *Cedar Creek Wind LLC*, 137 FERC ¶ 61,006 at P 35 & n.57 (2011); *W. Penn Power Co.*, 71 FERC ¶ 61,153, at 61,495 (1995)).

NARENCO has made a good faith effort to finalize a PPA for the Magnolia QF based on the avoided costs of Santee Cooper at the time the LEO became effective. Notwithstanding, Santee Cooper has erected a series of obstacles to moving forward. The following are examples of those obstacles:

- *Mischaracterized Contract*: On June 8, 2018, Mr. Spivey sent an email to NARENCO stating, "I appreciate your continued interest to develop projects for Santee Cooper. While we have been encouraged by all of the unsolicited proposals we are receiving, Santee Cooper is not in a position to enter into any agreements at this time outside of what we may be required to enter into under PURPA." This email suggests that Santee Cooper is characterizing the Magnolia commitment to sell the output of the Magnolia QF as something other than a PURPA transaction. The communications referenced in the summary above indicate that the parties had always spoken about the Magnolia PPA as a PURPA transaction and that Santee Cooper understood this.

- *Changed Contract Term*: On June 11, 2018, NARENCO again asked Santee Cooper to "tender Magnolia Solar LLC a Power Purchase Agreement that conforms to your understanding of Santee Cooper's obligation under PURPA to purchase power from a Qualifying Facility." NARENCO also reiterated the commitment it made on May 11, 2018, "Magnolia Solar LLC, a Qualifying Facility (FERC: QF15-850), committed to sell 100% of its output to Santee Cooper." On June 14, 2018, Mr. Spivey informed NARENCO that he would "be scheduling a time to get my our attorney to see how we move forward. Also I want to let you know that a major change that will be required to the DRAFT you provided is that the Term will be need to be reduced to conform to the 5 years required under PURPA. Would NARENCO still what to pursue a five year deal?" During the course of the discussions leading up to the May 11, 2018 LEO, the parties never discussed a five year term, nor would they have had reason to consider a five year term based on the

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland. For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP0800088

J. Michael Baxley
November 15, 2019
Page 4

customary terms in South Carolina.  Nevertheless, following NARENCO's May 11, 2018 email establishing the LEO for Magnolia, Mr. Spivey changed course and claimed that PURPA requires a 5-year term.  There is no such requirement under PURPA.  In addition, a minimum 10-year term is consistent with the term provisions in the contracts filed for projects such as Palmetto Plains Solar Project, LLC, Huntley Solar, LLC, Lily Solar LLC, Midlands Solar LLC, and Beulah Solar, LLC, as well as the term South Carolina adopted in the Energy Freedom Act for PURPA transactions.  *See* S.C. Code § 58.41.20(F)(1) (requiring "electrical utilities, subject to approval of the commission, shall offer to enter into fixed price power purchase agreements with small power producers for the purchase of energy and capacity at avoided cost, with commercially reasonable terms and a duration of ten years.").  Finally, it is also shorter than the 15- to 25-year term referenced in the Request for Information circulated on behalf of Santee Cooper on October 16, 2019 by John Painter of nFront Consulting.  Santee Cooper's insistence on a 5-year term thus is arbitrary and unreasonable.

- *Changed Pricing*:  On May 4, 2018, Mr. Spivey provided NARENCO with avoided cost information for solar projects, which set the rate when Magnolia established its LEO on May 11, 2018.  Nearly a year later, on April 16, 2019, Santee Cooper returned the PPA with the LEO rates eliminated.  Mr. Salisbury confirmed in a telephone call with NARENCO that the rates provided by Mr. Spivey "are no longer available."

- *Changed Agreement*:  On November 16, 2016, Santee Cooper provided a form of PPA to NARENCO.  During the course of discussions about the Magnolia LEO and the avoided costs, the parties relied on this PPA.  On May 11, 2018, NARENCO returned the PPA that Santee Cooper had provided, populated to include the avoided costs that Mr. Spivey had provided to NARENCO.  On August 23, 2018, Santee Cooper inexplicably changed the form of the PPA and required NARENCO to start negotiations anew.  In addition to wasting resources, the new PPA was less favorable to NARENCO.  Nevertheless, NARENCO accepted most of the revised terms of the PPA to move the process along.

- *Slow Negotiations*:  In the interest of brevity, we have only referenced a select number of communications that NARENCO has had with Santee Cooper about the Magnolia PPA.  A more detailed timeline shows that NARENCO's attempts to engage Santee Cooper on the Magnolia PPA has spanned three years without finalizing a PPA.  It also shows that NARENCO had to shepherd diligently the discussions, often waiting weeks or months before getting a response and often requiring NARENCO to send or leave messages seeking a response from Santee Cooper.  NARENCO understands there are many reasons why the delays occurred, but the entire process should have been completed more quickly and certainly by now.  The delays instead have served as an obstacle to Magnolia enjoying the rights to which it is lawfully entitled under PURPA.

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland.  For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

ELECTRONICALLY FILED - 2021 Apr 21 3:24 PM - BERKELEY - COMMON PLEAS - CASE#2021CP080088

J. Michael Baxley
November 15, 2019
Page 5

FERC has found on numerous occasions that the obstacles that NARENCO has experienced with Santee Cooper for the Magnolia QF are contrary to PURPA. *See, e.g., FLS Energy, Inc.*, 157 FERC ¶ 61,211 at P 24 (finding that "a requirement for a facilities study or an interconnection agreement, given that the utility can delay the facilities study or delay tendering an executable interconnection agreement, as a predicate for a legally enforceable obligation is inconsistent with PURPA and the Commission's regulations under PURPA"); *Cedar Creek Wind, LLC*, 137 FERC ¶ 61,006 at P 36 (2011) (stating that the "use of the term 'legally enforceable obligation' is intended to prevent the utility from delaying the signing of a contract, so that a later and lower avoided cost is applicable.").

NARENCO hopes that the obstacles it has faced around the Magnolia PPA are inadvertent by-products resulting from changes in personnel and other challenges facing Santee Cooper during the relevant period.

NARENCO recognizes the recently announced Resource Plan of Santee Cooper, approved by the Santee Cooper Board of Directors on September 11, 2019 and provided to the South Carolina Department of Administration (report: https://www.santeecooper.com/About/Business-Forecast/_pdfs/2019-09-09-Santee-Cooper-Business-Forecast.pdf) changes the strategic approach to Third Party PPAs. The Resource Plan presents an ambitious target for procurement of 1,000 MW of solar by 2024. Furthermore, the 2019 Request for Information, on October 16th, indicates Santee Cooper is contemplating solar PPA contract terms of 15 to 25 years.

Given this background, it appears that executing a 20 year PPA with Magnolia at the LEO rates would help achieve Santee Cooper's procurement goals as established in the Resource Plan while also fulfilling its PURPA obligations to the Project. NARENCO values its relationship with Santee Cooper and would like to proceed towards getting the Magnolia PPA signed by year-end.

We would appreciate it if you could provide us with notice of how you intend to proceed by December 6, 2019.

Sincerely,

*Catherine Krupka*

Catherine M. Krupka

cc:    Ben Friedell (NARENCO)
       Carey Salisbury (Santee Cooper)

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland. For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
                        )   NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY      )
                        )   Case No.: 2021-CP-08- 00888
                        )
                        )
MAGNOLIA SOLAR LLC      )
                        )
        Plaintiff,      )   **ACCEPTANCE OF SERVICE**
                        )
        v.              )
                        )
SOUTH CAROLINA PUBLIC SERVICE )
AUTHORITY, (AKA "SANTEE )
COOPER"),               )
                        )
        Defendant.      )
_____)

I, Rebecca Roser, Associate General Counsel for the South Carolina Public Service Authority, hereby accept service of process of the Summons and Complaint, on behalf of the Defendant South Carolina Public Service Authority, (aka "Santee Cooper"), in the above-captioned proceeding, this __28th__ day of April 2021, and hereby acknowledge that I have the authority to do so on behalf of Defendant.

_____
Rebecca Roser
Associate General Counsel, South Carolina Public Service Authority


Date: April ____28____, 2021